IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HAYWOOD CARMICHAEL. | Criminal Case No. CCB-97-0329 |

## MEMORANDUM

Now pending before the court is Haywood Carmichael's motion for compassionate release. Carmichael is currently serving a sentence of life imprisonment for crimes he committed as a teenager. Given intervening developments in judicial discretion in sentencing, the role of youth in criminal punishment, and sentencing practices in this District, Carmichael's sentence is dramatically out of step with the sentence he would face were he sentenced today. Accordingly, the court will grant the motion for compassionate release and modify Carmichael's sentence to time-served plus fourteen days.

## BACKGROUND

On September 16, 1997, Carmichael was charged, alongside co-defendant Donald Ferebe, with one count of "conspiracy to distribute and possess with intent to distribute cocaine base and marijuana, two counts of firearms murder during or in relation to a drug trafficking crime, and" one count of "use and possession of a firearm in relation to a drug trafficking crime." *United States v. Carmichael*, 208 F.3d 210 (Table), 2000 WL 232146 (4th Cir. 2000). After a jury trial, Carmichael was convicted on all counts. *See id.*[1]

---

[1] Specifically, the indictment charged Carmichael with, and he was convicted of, one count of conspiracy to distribute cocaine and marijuana under 21 U.S.C. §§ 841, 846 (Count One); two counts of firearms murder during or in relation to a drug trafficking crime under 18 U.S.C. § 924(j)(1) (Counts Two and Three); and one count of using and carrying firearms during and in

1

Carmichael's convictions stem from his role in an August 1995 double-murder. At the time, Carmichael and Ferebe were coconspirators in an East Baltimore drug operation, with Ferebe supplying Carmichael cocaine-base, crack-cocaine, and marijuana to distribute in the vicinity of East 37th Street in Baltimore City. As part of the conspiracy, Ferebe had been charged in state court with killing Richard Thomas, another dealer he had supplied.[2]

The principal witness in Ferebe's state murder trial was Benjamin Page. As the trial date approached, Ferebe became increasingly eager to prevent Page's testimony. After considering various methods of securing Page's cooperation, Ferebe ultimately enlisted another member of the drug conspiracy, William Thorne, to murder Page and ensure his silence. Thorne, in turn, recruited Carmichael, then nineteen, to help execute the task, and a third participant, Shawnta Graham, to be the driver.

On August 15, 1995, Thorne, Carmichael, and Graham set out to find Page. The trio canvassed the neighborhood in a stolen vehicle, eventually spotting Page on Streeper Street in East Baltimore. After identifying Page's location, the group doubled back to Carmichael's house to retrieve their firearms. They then returned to Streeper where Graham, still driving, dropped Thorne on one end of the street and Carmichael on the other. From there, the two men converged on Page's position in the middle of the block, firing from both sides. All together, they shot Page fourteen times, killing him. Additional shots also hit two bystanders, Yolanda Evans and Charon Peterson. Evans died from her injuries; Peterson survived.

---

relation to a drug trafficking crime under 18 U.S.C. § 924(c) (Count Four). *See United States v. Ferebe*, 332 F.3d 722, 724 n.1 (4th Cir. 2003).

[2] Although the physical and electronic preservation of the trial record in this case is incomplete, the parties substantially agree on the factual background, so the court draws its account from the overlap in their briefing, which is consistent with the presentence report.

In 1998, Carmichael was tried and convicted for shooting Page, Evans, and Peterson. Judge Legg, who presided over Carmichael's trial, sentenced him to three concurrent sentences of life imprisonment on the conspiracy and murder charges, and to five years on the firearms charge. *See* Judgment, ECF 68. Carmichael appealed his conviction, and the Fourth Circuit affirmed. *See Carmichael*, 2000 WL 232146.

After serving over two decades of his life sentence—more than half his life—Carmichael filed a pro se motion for compassionate release on March 2, 2021. *See* Mot. for Compassionate Release, ECF 172. Several months later, he complemented his brief initial filing with a more comprehensive supplement, again filed pro se. *See* Suppl. Mot. for Compassionate Release, ECF 178.[3] A few months after that, Carmichael filed a second supplement to his motion for compassionate release, this time through counsel. *See* Sealed Second Suppl. Mot. for Compassionate Release, ECF 184.[4] The Government then filed a response opposing the motion, *see* ECF 185, and Carmichael filed a reply in support, *see* ECF 186. Carmichael's motion is now ripe for review, and no hearing is necessary to resolve it. *See* Local Rule 105.6.

## ANALYSIS

Carmichael asks the court to modify his sentence under 18 U.S.C. § 3582(c)(1)(A), commonly known as the "compassionate release" statute. The compassionate release statute permits a court to reduce an incarcerated person's sentence in "extraordinary and compelling" circumstances if a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). Fourth Circuit law permits a district court to "consider *any* extraordinary and compelling reason for release that a defendant might raise." *See United States v. McCoy*, 981

---

[3] The motion to supplement the original filing, ECF 178, will be granted.
[4] The related motion to appoint counsel, ECF 176, will be denied as moot, and the motion to seal the second supplement to the motion for compassionate release, ECF 183, will be granted.

3

F.3d 271, 284-86 (4th Cir. 2020) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). Accordingly, the court may grant a motion for compassionate release if (1) extraordinary and compelling circumstances warrant a sentence reduction and (2) such a reduction is consistent with the § 3553(a) factors.[5]

**I. Extraordinary and Compelling Reasons Warranting Relief**

A petitioner's sentence presents an extraordinary and compelling basis for relief if they would "likely receive a dramatically lower sentence than the one [they are] currently serving" were they sentenced today. *United States v. Elzey*, JKB-09-0288, 2022 WL 316717, at *2 (D. Md. Feb. 2, 2022) (quoting *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020), *aff'd sub nom. McCoy*, 981 F.3d 271)[6]; *see McCoy*, 981 F.3d at 286. As the court explains below, three developments in the years since Carmichael was sentenced convince it that, were Carmichael sentenced today, he would receive a sentence in the thirty-year range—a "gross disparity" from the sentence the court imposed and an extraordinary and compelling circumstance that warrants relief. *See McCoy*, 981 F.3d at 285 (quoting *United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)).

First, the court would today have discretion in setting Carmichael's sentence. When Carmichael was originally sentenced in 1999, the U.S. Sentencing Guidelines required Judge Legg to impose a Guideline sentence of life imprisonment.[7] But in 2005, the U.S. Supreme Court held

---

[5] The Government does not dispute that Carmichael's motion is properly before the court.
[6] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.
[7] Although Judge Legg may have been required to sentence Carmichael to life only on the conspiracy count, that obligation no doubt influenced his decision to impose the same sentence for the murder convictions: it would surely have seemed perverse to sentence Carmichael to life imprisonment for conspiracy to distribute—for which a life sentence was required due to a cross-reference of the murder convictions—but to something less for the very murders that enhanced the conspiracy sentence.

4

in *United States v. Booker*, 543 U.S. 220 (2005) that the Guidelines provide advisory—not mandatory—sentencing ranges for a court to consider as one factor in imposing a criminal sentence. So were Carmichael sentenced today, the court would have newfound discretion to impose an appropriate sentence under the factors enumerated in § 3553(a) notwithstanding the Guideline sentence.

Second, in the years since Carmichael was sentenced, the U.S. Supreme Court has placed increased importance on the role of youth in sentencing.[8] As the Supreme Court has since explained, "developments in psychology and brain science" have revealed the need to place children and adults in "constitutionally different" categories "for purposes of sentencing" because of the "diminished culpability" and increased "prospects for reform" during the stages of adolescent psychological development. *See Miller v. Alabama*, 567 U.S. 460, 471-72 (2012) (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). Although these constitutional decisions draw "the line at 18 years of age," the Court has also recognized that the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper v. Simmons*, 543 U.S. 551, 574 (2005). Adapting to this understanding, courts now "consistently reject life sentences for those who commit crimes, even heinous crimes, in the 'immaturity, irresponsibility, impetuousness, and recklessness' of youth," including in the years after a defendant turns eighteen. *See* Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471 (quoting *Miller*, 567 U.S. at 476).

---

[8] *See Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Jones v. Mississippi*, 141 S. Ct. 1307 (2021). Carmichael was sentenced in 1999 before the first of these decisions was issued.

Third, contemporary sentencing courts in this District "routinely impose sentences within the thirty-year range" for youthful defendants "involved in drug-related killings." *See United States v. Williams*, CCB-07-0402, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021) (collecting cases). Sentencing data show that the median sentence for murder in this District is 300 months,[9] and experience confirms that cases like Carmichael's follow this trend. For example, in *United States v. Floyd*, this court sentenced to 360 months a defendant who was convicted of conspiring to commit murder in furtherance of a racketeering conspiracy. *See United States v. Barronette*, 46 F.4th 177, 189, 204 (4th Cir. 2022). Similarly, in *United States v. Hunter*, Chief Judge Bredar sentenced to 321 months a defendant who admitted to distributing a mandatory-minimum quantity of drugs and to shooting and killing a rival gang member in a retaliatory strike. *See* Judgment, *United States v. Hunter*, JKB-16-0363 (D. Md. June 15, 2018), ECF 706; Plea Agreement at 4, *United States v. Hunter*, JKB-16-0363 (D. Md. Oct. 3, 2017), ECF 288. Likewise, in *United States v. Weaver*, Judge Bennett sentenced to 360 months a defendant who pled guilty to the execution-style murder of another drug dealer. *See* Sentencing Tr. 49:14-50:2, 52:16-20, *United States v. Weaver*, RDB-19-0144 (D. Md. Aug. 15, 2022), ECF 214.[10]

Sentencing Carmichael in the thirty-year-range would remain consistent with this precedent even as he continues to face a Guideline sentence of life imprisonment today. Indeed,

---

[9]  *See Interactive Data Analyzer*, U.S. Sentencing Comm'n, https://ida.ussc.gov/analytics/saw.dll?Dashboard. At the circuit and national level, the average is even lower: The median sentence for murder is 284 months in the Fourth Circuit and 231 months nationwide. *See Statistical Information Packet, Fiscal Year 2021, Fourth Circuit* 11, U.S. Sentencing Comm'n (2022), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/4c21.pdf.

[10] This court has followed these examples in the context of post-conviction relief as well. For instance, in *United States v. Gray* this court granted a motion for compassionate release and resentenced to the equivalent of thirty-one years a defendant who was convicted of murder in aid of racketeering. *See United States v. Gray*, CCB-95-0364, 2021 WL 1856649, at *1, *6 (D. Md. May 10, 2021).

6

the Guideline ranges for the defendants sentenced in *Floyd*, *Hunter*, and *Weaver* each contemplated life imprisonment.[11] The defendant in *Floyd* faced, like Carmichael, a Guideline sentence of life, and, like Carmichael, exercised his right to take his case to trial. *See Barronette*, 46 F.4th at 187, 211. Yet after taking all the relevant factors into account, the court imposed a thirty-year sentence notwithstanding the Guideline calculation. *See id.* at 211. On top of this, Carmichael was convicted for crimes committed at a younger age—nineteen—and with a lower criminal history category—one—than any of these similarly situated defendants.

For all these reasons, the court concludes that, were Carmichael convicted today, he would likely receive a sentence "within the thirty-year range." *See Williams*, 2021 WL 3725435, at *3.

A thirty-year-range sentence represents a "gross disparity" with the life term Carmichael is currently serving. *McCoy*, 981 F.3d at 285 (quoting *Redd*, 444 F. Supp. 3d at 723). As Chief Judge Bredar has explained, a "mandatory life sentence, however imposed, constitutes a significant sentencing disparity when considering how the modern criminal justice process" operates on defendants like Carmichael. *See* Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471. Accordingly, the disparity between Carmichael's sentence and the sentence he would face today, understood in the context of his particular circumstances and intervening legal developments, creates an extraordinary and compelling circumstance that may warrant a reduced sentence.

## II. Section 3553(a) Factors

Under the compassionate release statute, the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" before reducing a defendant's sentence for

---

[11] *See Barronette*, 46 F.4th at 211; Plea Agreement at 2, *United States v. Hunter*, JKB-16-0363 (D. Md. Oct. 3, 2017), ECF 288; Sentencing Tr. 21:2-10, *United States v. Weaver*, RDB-19-0144 (D. Md. Aug. 15, 2022), ECF 214.

"extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). The factors the court considers include: (1) "the nature and circumstances of the offense"; (2) "the history and characteristics of the defendant"; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, protect the public, and provide rehabilitative services; (4) the Guideline sentence; and (5) the need to avoid unwarranted sentencing disparities among similarly situated defendants. *See* 18 U.S.C. § 3553(a). Ultimately, the court concludes that a sentence of thirty years is "sufficient, but not greater than necessary, to comply with the purposes" of incarceration. *See* 18 U.S.C. § 3553(a).

The court begins with the severity of the offense, which in Carmichael's case cannot be overstated. Carmichael participated in a conspiracy to distribute dangerous and illegal drugs, and ultimately carried out deadly violence to advance its interests. His actions inflicted immeasurable harm upon the community, and undeniably "rank among the most serious offenses imaginable." *See* Mem. and Order at 10, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471. A sentence of corresponding severity is undoubtedly warranted.

At the same time, however, Carmichael's personal characteristics counsel restraint. Carmichael committed the crime of conviction when he was just nineteen years old. And with time, he has exemplified the notion that an adolescent's character "is not as well formed as that of an adult," *Roper*, 543 U.S. at 570, and that young people retain a "greater prospect[] for reform," *Miller*, 567 U.S. at 471. As he has matured throughout his period of incarceration, Carmichael has maintained an excellent disciplinary history, accruing just two infractions in over twenty-five years in custody. *See* Second Suppl. Mot. for Compassionate Release at Ex. 4, ECF 184-4. All the while, he has pursued self-improvement, completing his GED, the Challenge Program, and a slew of

8

educational and vocational courses. *See id.* at 3-4.[12] He has also fulfilled a variety of work assignments, where he has earned positive evaluations and maintained "an excellent rapport with staff and other inmates." *See id.* at 3. Ultimately, Carmichael's progress has been recognized both inside and outside the Bureau of Prisons: the Bureau moved Carmichael to a medium security facility in 2013, *see id.* at 4, notwithstanding the severity of his conviction, and he enjoys broad support for his return to the community, where offers of housing and employment await him. *See* Second Suppl. Mot. for Compassionate Release Ex. 6 at 1-2, ECF 184-6.[13]

Turning to the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, protect the public, and provide rehabilitative services, the court is satisfied that a sentence of time served plus fourteen days, which when good conduct credit is considered is equivalent to a thirty-year sentence, appropriately fulfills these objectives. As the court has explained, Carmichael committed an offense of the utmost severity, and a correspondingly exacting sentence is warranted to underscore the seriousness of his actions, promote general deterrence, and ensure public safety. A thirty-year sentence vindicates these interests and accounts for the extent of Carmichael's violence relative to other similarly situated defendants. There is also no doubt that thirty years is a severe punishment—particularly for a

---

[12] "The Challenge Program is a cognitive-behavioral, residential treatment program developed for male inmates in penitentiary settings. The Challenge Program provides treatment to high security inmates with substance abuse problems and/or mental illnesses. Programming is delivered within a modified therapeutic community environment; inmates participate in interactive groups and attend community meetings. In addition to treating substance use disorders and mental illnesses, the program addresses criminality, via cognitive-behavioral challenges to criminal thinking errors." Federal Bureau of Prisons, *Directory of National Programs* 10 (2017), https://www.bop.gov/inmates/custody_and_care/docs/20170518_BOPNationalProgramCatalog.pdf. The methods used in the Challenge Program have "strong empirical support" and "have been noted to reduce misconduct, substance abuse/dependence, and recidivism." *Id.*

[13] The court also acknowledges Carmichael's acceptance of responsibility and remorse for his actions. *See* Reply in Supp. of Mot. for Compassionate Release Ex. 1, ECF 186-1.

teenage defendant—that courts in this District have agreed conveys, and responds to, the gravity of his offense. Lastly, such a sentence affords appropriate opportunity for rehabilitation, which Carmichael's record indicates he has amply satisfied.[14]

Finally, the court accounts for the Guideline sentence and the need to avoid unwarranted sentencing disparities among similarly situated defendants. As discussed, Carmichael faces a Guideline sentence of life imprisonment. Such a sentence would, however, represent a gross disparity between Carmichael's sentence and the thirty-year-range sentences typically imposed upon other young men convicted of drug-related killings. It would also be out of step with the punishments of Thorne and Graham—the two other participants in the shooting—both of whom were convicted on state charges and have since been paroled. *See* Second Suppl. Mot. for Compassionate Release Exs. 8-9, ECFs 184-8, 184-9.

Taking all these considerations together, the § 3553(a) factors favor a sentence modification to thirty years.

## CONCLUSION

For the reasons explained above, the severity of Carmichael's sentence, taken in combination with the § 3553(a) factors, warrant a sentence reduction to thirty years. Carmichael has to date served approximately twenty-six years, which, given the good-time credit he would have earned over that time were he serving a term of years, fulfills the requirements of a thirty-year sentence. *See* 18 U.S.C. § 3624(b). Accordingly, the court will reduce Carmichael's sentence

---

[14] Although the court takes seriously the Government's position that Carmichael "remains a danger to the community," the Government has offered no evidence to substantiate this contention aside from reiterating the severity of Carmichael's offense. *See* Opp'n to Mot. for Compassionate Release at 1, 21-22, ECF 185. Against Carmichael's two-decade record of near-perfect custodial conduct, and his transfer to a medium security prison, this conclusory assertion is not enough to justify such a dramatic deviation from the sentences imposed upon other defendants convicted of analogous crimes.

to time-served plus 14 days to allow for reentry planning. All other terms of the original sentence, including the term of supervised release, will remain the same.

    A separate order follows.

 10/16/2023                                                                                                  /s/
Date                                                                                                Catherine C. Blake
                                                                                               United States District Judge